Case 4:24-cv-00684   Document 35   Filed on 03/07/25 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
March 07, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JESUS ANTONIO RANGEL, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:24-cv-00684 |
| § | |
| JOHN OR JANE DOE, *et al.*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

On February 8, 2024, Plaintiff Jesus Antonio Rangel instituted this personal injury action in state court against Defendant Werner Enterprises, Inc. to recover for the injuries he sustained as a result of an April 14, 2022 hit-and-run by a tractor-trailer driver. Werner is the owner of the trailer that was being pulled by the tractor that hit Rangel. In addition to Werner, Rangel also named the unidentified driver of the vehicle that hit him as Defendant Doe.

On February 26, 2024, Werner removed this action to this court on the basis of federal diversity jurisdiction. On July 25, 2024, I entered a Docket Control Order to govern the deadlines in this case. Relevant here, I set a deadline of February 23, 2025, to amend pleadings. *See* Dkt. 19 at 1.

On February 3, 2025, Werner timely filed a motion for summary judgment. Dkt. 29. Rangel's response to that motion, if any, was due on February 24, 2025. On February 24, 2025, Rangel did not file a response to Werner's motion for summary judgment. Rather, Rangel filed a First Amended Complaint, purporting to substitute 3RM Services, LLC—the company that Werner contracted with to transport Werner's trailer, and that hired the driver of the tractor that was pulling Werner's trailer at the time of the hit-and-run—as a Doe defendant. *See* Dkt. 32 at 1. Rangel did not request leave of court to late-file this complaint.

On February 25, 2025, Rangel filed Plaintiff's Motion for Continuance, Objections to Defendant Werner's Summary Judgment Evidence, and Response to Defendant Werner Enterprises Inc.['s] Motion for Summary Judgment. Dkt. 33. For reasons that will readily become apparent, I will address Rangel's motion for continuance first, before turning to Werner's motion for summary judgment.

## MOTION FOR CONTINUANCE

Rangel "requests that the Court reset the hearing on Defendant Werner's Motion for Summary Judgment to allow Defendant 3RM Services, LLC to file an answer after being served and conduct discovery with Defendant 3RM Servicers [sic], LLC." Dkt. 33 at 1. This request assumes Rangel will be permitted to late-file his First Amended Complaint and add a new defendant to this case. He will not.

As stated in the Docket Control Order, "[a]fter expiration of [the deadline to amend pleadings], a party seeking to amend pleadings must file a motion for leave demonstrating both good cause and excusable neglect in accordance with Fed. R. Civ. P. 6(b)(1)(B)." Dkt. 19 at 1. Rangel has filed no such motion. "[F]ailing to request leave from the court when leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect." *U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals."). Accordingly, the First Amended Complaint is a nullity.

Even if I were to consider Rangel's motion for continuance as a motion for leave, I would still deny his request to amend and add 3RM to this litigation. When a deadline has passed, I "may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1)(B). The Supreme Court has articulated four non-exhaustive factors to consider when determining whether neglect was excusable: (1) "the danger of prejudice" to the opposing party, (2) "the length of the delay and its

potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993); *see also L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 525 (5th Cir. 2021) (reiterating the standard articulated in *Pioneer*). "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances." *Nelson*, 17 F.4th at 525 (quotation omitted).

Each of these four factors weighs against extending Rangel's time to amend his pleadings. Rangel admits in the First Amended Complaint that Werner identified 3RM on June 7, 2024. *See* Dkt. 32 at 4. Rangel complains that Werner "failed to disclose 3RM . . . in its Initial Disclosures." *Id.* But that does nothing to change the fact that Rangel knew that 3RM was a potential party for 262 days before amending his pleadings. This inexcusable delay is fatal to Rangel's attempt to amend.

Finally, the statute of limitations on Rangel's claim against 3RM expired on April 14, 2024—two years after the April 14, 2022 accident. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) ("Texas has a two[-]year statute of limitations for personal injury claims."). "[U]nless exceptions created by estoppel, equitable tolling, or relation back doctrine applied, [Rangel's] claims against [3RM] would be futile because the two-year statute of limitations had run as of the time [Rangel filed the First Amended Complaint]." *Crostley v. Lamar County*, 717 F.3d 410, 419 (5th Cir. 2013). Rangel believes "[r]elation back applies in this lawsuit." Dkt. 32 at 5. But "Rule 15(c)[1] does not allow an amended complaint

---

[1] Relevant here, the Federal Rules of Civil Procedure allow an amendment that changes the name of a party to relate back to the date of the original pleading when (1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"; (2) "the party to be brought in by amendment . . . received such notice of the action that it will not be prejudiced in defending on the merits"; and (3) the party to be added "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(B)–(C).

adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998) (quotation omitted). Rangel admits the only reason he did not name 3RM sooner is because its identify "was unknown" to him. Dkt. 32 at 4. Thus, it would be futile to allow Rangel to add 3RM at this point. *See Crostley*, 717 F.3d at 422 ("Therefore, the bar created by the statute of limitations for a claim against [3RM] means that an amendment adding [it] as a defendant would indeed be futile.").

\* \* \*

For all the reasons identified above, I strike Rangel's First Amended Complaint (Dkt. 32) and deny his motion for continuance (*see* Dkt. 33) as moot. With these issues settled, I turn to Werner's motion for summary judgment.

## MOTION FOR SUMMARY JUDGMENT

**A.    SUMMARY JUDGMENT STANDARD**

"Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019); *see also* FED. R. CIV. P. 56(a). A fact issue is material only "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989). In determining whether a fact issue exists, I "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Com. & Indus. Ins. Co. v. Grinnell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002). "In determining whether there is a genuine dispute as to any material fact, [I] must consider all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004).

"Summary judgment should be granted where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *In re Deepwater Horizon*, 48 F.4th 378, 382 (5th Cir. 2022) (quotation omitted). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (quotation omitted).

**B.     ANALYSIS**

Having struck the First Amendment Complaint, the operative pleading is the petition that Rangel filed in state court. *See* Dkt. 1-2. In that petition, Rangel asserts two types of negligence claims against Werner. First, Rangel seeks to hold Werner vicariously liable for Doe's negligence under the *respondeat superior* doctrine. *See* Dkt. 1-2 at 3. To the extent Rangel alleges that Werner negligently hired, retained, trained, or supervised its employees, these are all simply variations of theories under which Rangel attempts to hold Werner responsible for Doe's negligence. Second, Rangel contends that Werner negligently entrusted a motor vehicle to Doe. *See id.* I will address each claim in turn.

### 1.     *Werner Cannot Be Vicariously Liable for Doe's Negligence Because Werner Did Not Employ Doe*

The parties do not dispute the facts of the accident. Rather, they dispute who is responsible for Doe's negligence. Rangel seeks to hold Werner vicariously liable for Doe's negligence under the *respondeat superior* doctrine. "Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). Thus, to hold Werner vicariously liable for Doe's negligence, Rangel must prove that Doe was

acting in the course and scope of Doe's employment with Werner. Yet, the record conclusively establishes that Werner did not employ Doe. *See* Dkt. 29-2 at 3 ("Werner was not the motor carrier transporting the load nor was it the owner of the tractor or the employer of John or Jane Doe.").[2]

The only evidence Rangel offers in response to Werner's verified answer that it did not employ Doe is the Broker-Carrier Agreement between Werner and 3RM (Dkt. 29-3)—a document that, just three pages earlier in his response brief, Rangel objects to as unauthenticated hearsay. Even if I allow Rangel to object to the Broker-Carrier Agreement when it hurts him and rely on the Broker-Carrier Agreement when it helps him, Rangel still fails to establish that Werner employed Doe. The uncontroverted evidence is that Werner did not employ Doe. *See* Dkt. 29-2 at 3. The Broker-Carrier Agreement merely establishes that "[3RM] shall not be considered . . . as having any employment status with [Werner]." Dkt. 29-3 at 6.

Despite the plain language of the Broker-Carrier Agreement, Rangel argues that the Federal Motor Carrier Safety Regulations "and the related enabling statutes now treat independent contractors as statutory employees of the motor carrier." Dkt. 33 at 9. That may be true, but Rangel overlooks that Werner was not operating as a motor carrier in its transaction with 3RM; Werner was operating as a broker. *See* Dkt. 29-3 at 2. "A transportation entity may have authority to operate as both a broker and a carrier. . . . The focus of the court's inquiry must be on [Werner]'s role in the specific transaction with [3RM] and the nature of the relationship between [Werner's customer, Werner, and 3RM]." *Schramm v. Foster*, 341 F. Supp. 2d 536, 549 (D. Md. 2004).

---

[2] Rangel objects to Werner's submission of its Broker-Carrier Agreement with 3RM (Dkt. 29-3) as unauthenticated hearsay. *See* Dkt. 33 at 4. Rangel further objects to Werner's Objections and Answers to Plaintiff's Interrogatories (Dkt. 29-5) because they were "not served with either a sworn verification or an unsworn declaration stating that the answers provided were based on personal knowledge . . . and that the answers were true and correct." *Id.* Even if I sustain these objections, it does not change the analysis. Werner still has its verified answer (Dkt. 29-2) as evidence that it did not employ Doe.

Rangel contends that "[a] defendant can be both a broker and a statutory employer" where the defendant "had control over and ownership of the trailer . . . and controlled its use"; "controlled the points of shipment"; "demanded that [3RM and Doe] comply with all state and federal laws and regulations"; and "demanded that . . . [3RM] obtain a signature from the consignee or its agent showing the kind and quality of product delivered, and any damages, overages or shortages." Dkt. 33 at 8–9. But "the fact that [Werner] instructed [3RM] as to the time and place of pick-up and delivery does not amount to an assumption of control as the carrier's dispatcher." *Schramm*, 341 F. Supp. 2d at 550 (declining to find that broker was statutory employer of driver).

Rangel's best case on this point, *Sperl v. C.H. Robinson Worldwide, Inc.*, 946 N.E.2d 463 (Ill. App. 3d 2011), is factually inapposite. In *Sperl*, the broker actually owned the product being transported, and the product was being transported to the broker's own warehouse. *See id.* at 471. Additionally, the broker imposed fines on drivers "as incentives to drivers to get the load delivered on time." *Id.* at 472. The court found that the broker's "extensive requirements, coupled with [its] fine-based compliance, [and the broker's directing the driver's] conduct during the entire transportation process . . . support the finding that [the broker] had the right to control the manner in which [the driver] performed her job." *Id.* Rangel alleges no comparable facts here.

Werner's "status as a broker for the shipment does not make [3RM] or [Doe] an employee of Werner." *Crocker v. Morales-Santana*, 854 N.W.2d 663, 672 (N.D. 2014). "[Rangel] has not provided any evidence indicating Werner was operating as a motor carrier in this case and its ownership of the trailer does not establish it was operating as a motor carrier-lessee." *Id.* Because Rangel has no evidence to establish that Werner was operating as a motor carrier in its transaction with 3RM, Werner cannot be considered Doe's statutory employer. Without an employment relationship between Werner and Doe, Rangel's attempts to hold Werner liable for

Doe's negligence—whether under a theory of *respondeat superior*, negligent hiring, negligent training, negligent supervision, or negligent retention—all fail.

### 2. *Werner Did Not Negligently Entrust a Motor Vehicle to Doe*

Having established that Rangel cannot hold Werner vicariously liable for Doe's negligence, I must next examine whether Rangel has produced any evidence that Werner negligently entrusted a motor vehicle to Doe.

"Courts have not defined the term 'motor vehicle' in negligent-entrustment claims." MICHOL O'CONNOR, O'CONNOR'S TEXAS CAUSES OF ACTION Ch. 21-C § 2 (2025 ed.). "Common usage," however, "has made the phrase 'motor vehicle' a generic term for all classes of self-propelled vehicles." *Slaughter v. Abilene State Sch.*, 561 S.W.2d 789, 792 (Tex. 1977). It is undisputed that the trailer itself is not self-propelled. Accordingly, to prevail on a theory of negligent entrustment, Rangel must produce evidence that (1) Werner entrusted the *tractor* to Doe; (2) Doe "was an unlicensed, incompetent, or reckless operator"; (3) at the time of the entrustment, Werner "knew or should have known that [Doe] was an unlicensed, incompetent, or reckless operator"; (4) Doe "was negligent on the occasion in question"; and (5) Doe's "negligence proximately caused the accident." *4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909 (Tex. 2016). Rangel's claim fails as to the first three prongs.

It is undisputed that Werner did not own the tractor, only the trailer. Because Werner did not own a self-propelled vehicle that was entrusted to Rangel, Werner cannot be liable for negligent entrustment. Even if Werner's trailer could qualify as a motor vehicle for the purposes of a negligent entrustment claim, Rangel's negligent entrustment claim would still fail as to the second and third prongs. Rangel still has not identified Doe. Thus, Rangel has no evidence to prove that Doe was unlicensed, incompetent, or reckless. Without evidence that Doe was unlicensed, incompetent, or reckless, Rangel also cannot establish that Werner should have known anything about Doe's qualifications. Accordingly, Werner is entitled to summary judgment on Rangel's negligent entrustment claim.

## CONCLUSION

For the reasons discussed above, Rangel's First Amended Complaint (Dkt. 32) is struck from the record. Rangel's Motion for a Continuance (Dkt. 33) is denied. Werner's Motion for Summary Judgment (Dkt. 29) is granted.[3]

A final judgment will issue separately.

SIGNED this 7th day of March 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[3] In his petition, Rangel requests a finding that Werner has "not provided evidence of financial responsibility as required by TEX. TRANSP. CODE § 601.053." Dkt. 1-2 at 4. Setting aside that nothing in the Texas Transportation Code suggests a private right of action for failure to provide evidence of financial responsibility, Rangel abandoned any such claim by not mentioning it in his response brief.